Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY WOLKE & ROTTER
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Ahmed Elwan*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHMED ELWAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VERITONE, INC.. RYAN STEELBERG, AND MICHAEL L. ZEMETRA,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Ahmed Elwan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Veritone, Inc. ("Veritone" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Veritone; and (c) review of other publicly available information concerning Veritone.

## **NATURE OF THE ACTION AND OVERVIEW**

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Veritone securities between October 14, 2025 and April 14, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Veritone, engages in the provision of artificial intelligence ("AI") computing solutions and services.

3.      On March 26, 2026, after the market closed, Veritone issued a press release, partially announcing fourth quarter 2025 financial results, including revenue of in the range of $18.1 million to $30.0 million, and that the "Company has provided a range of expected revenue for the three and twelve months ended December 31, 2025 because it is ***currently finalizing its accounting determination of certain revenue transactions under ASC 606.***"[1]

4.     On this news, Veritone's stock price fell $0.77, or 29.5%, to close at $1.84 per share on March 27, 2026, on unusually heavy trading volume.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

5.     On April 1, 2026, before the market opened, the Company filed a Form NT 10-K with the SEC, disclosing the Company "was unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2025 . . . within the prescribed time period primarily due to *delays in finalizing the Company's accounting determination of certain barter revenue transactions under ASC 606.*" The filing further stated the "ongoing accounting analysis" may "result in out-of-period adjustments, the largest of which may result in a *reduction in revenue for the quarter ended September 30, 2025 of $1.5 million to $2.5 million,* or 5.2% to 8.6%, of the total $29.1 million of revenue previously reported for such quarter." The Company disclosed it was evaluating "whether the previously issued financial statements for the quarters ended June 30, 2025 and September 30, 2025 may need to be *revised or restated.*"

6.     On this news, Veritone's stock price fell $0.18, or 9.14%, to close at $1.79 per share on April 1, 2026, on unusually heavy trading volume.

7.     On April 14, 2026, after the market closed, Veritone filed a Form 8-K with the SEC which disclosed the Company had "determined that the Company's previously issued unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2025 *should no longer be relied upon*" due to errors which resulted in, among other things, a significant overstatement of revenue and understatement of net loss. The filing disclosed a number of errors, including "an *error in the valuation of consideration received associated with an on-premise software sold and delivered to a customer*" as well as the "*misclassification of revenue and costs in transactions in which the Company acted as an agent under ASC 606, Revenue from Contracts with Customers*."

8.     On this news, Veritone's stock price fell $0.19, or 8.3%, to close at $2.09 per share on April 15, 2026, on unusually heavy trading volume.

9.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the

Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company inaccurately recorded and/or misclassified certain revenue and costs; (2) that, as a result, the Company overstated its revenue, assets, accounts receivable, royalties and other comprehensive income; (3) that Veritone maintained deficient internal controls over accounting and financial reporting; (4) that, as a result of the foregoing, the Company would be forced to restate certain of its financial statements, and (5) that, as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

14. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate

CLASS ACTION COMPLAINT

3

commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff Ahmed Elwan, as set forth in the accompanying certification, incorporated by reference herein, purchased Veritone securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Veritone is incorporated under the laws of Delaware with its principal executive offices located in Irvine, California. Veritone's common stock trades on the NASDAQ exchange under the symbol "VERI."

17.     Defendant Ryan Steelberg ("Steelberg") was the Company's Chief Executive Officer ("CEO") at all relevant times.

18.     Defendant Michael L. Zemetra ("Zemetra") was the Company's Chief Financial Officer ("CFO") at all relevant times.

19.     Defendants Steelberg and Zemetra (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Veritone engages in the provision of AI computing solutions and services.

### Materially False and Misleading

### Statements Issued During the Class Period

21.     The Class Period begins on October 14, 2025. On that day, Veritone issued a press release announcing certain results for the quarter ended September 30, 2025.  The press release touted the Company's purported financial results, as well as "recent VDR contract wins" including "bookings total nearly $40 million." Specifically, the press release stated as follows, in relevant part:

> With these recent VDR contract wins, **Veritone's near-time VDR pipeline and recent bookings total nearly $40 million,** an increase of 100% from August 2025, including both commercial and public sector customers.

> \*                    \*                    \*

> •**Revenue in Q3 2025 between $28.5 million to $28.7 million**, representing an increase of 30.5% at the midpoint from Q3 2024; and

> •**Non-GAAP Net Loss in Q3 2025 between $5.5 million to $6.0 million,** representing a 48.2% increase from the midpoint as compared to Non-GAAP Net Loss from continuing operations in Q3 2024.

> \*                    \*                    \*

| | Three Months Ended September 30, 2025 | Nine Months Ended September 30, 2025 |
|---|---|---|
| Net loss | $(29.3) to $(19.3) | $(76.0) to $(66.0) |
| Interest expense, net | $2.9 | $9.0 |
| Income taxes | $1.0 to $— | $1.6 to $0.6 |
| Depreciation and amortization | $7.4 | $21.5 |
| Stock-based compensation expense | $1.6 | $5.1 |
| Change in fair value of earnout receivable | $8.0 to $— | $7.2 to $(0.8) |
| Contingent purchase compensation expense | $0.1 | $0.3 |
| Foreign currency impact and other | $0.1 | $(0.1) |
| Acquisition and due diligence costs | $— | $0.9 |
| Severance and executive transition costs | $0.2 | $1.7 |
| Other non-recurring items | $2.0 to $1.5 | $3.0 to $2.5 |
| Non-GAAP net loss | $(6.0) to $(5.5) | $(25.8) to $(25.3) |

22.     On October 16, 2025, the Company filed a Form 8-K with the SEC, including an Item 8.01 for Other Events (the "Item 8.01"). The Item 8.01 provided supplementary financial measures for the Company's results for the quarter ended September 30, 2025. The Item 8.01 reported as follows, in relevant part:

**Item 8.01      Other Events.**

On October 14, 2025, Veritone Inc. (the "Company") announced certain preliminary, unaudited financial results for the quarter ended September 30, 2025. In particular, the Company expects:

• Revenue between $28.5 million to $28.7 million, representing an increase of 30.5% (measured at the midpoint) as compared to the quarter ended September 30, 2024;

• Net loss between $29.3 million to $19.3 million, representing a 7.9% increase (measured at the midpoint) as compared to net loss from continuing operations in quarter ended September 30, 2024; and

• Non-GAAP net loss between $5.5 million to $6.0 million, representing a 48.2% increase (measured at the midpoint) as compared to Non-GAAP net loss from continuing operations in quarter ended September 30, 2024.

\*                    \*                    \*

|  | Three Months Ended September 30, 2025 | Nine Months Ended September 30, 2025 |
|---|---|---|
| Net loss | $(29.3) to $(19.3) | $(76.0) to $(66.0) |
| Interest expense, net | $2.9 | $9.0 |
| Income taxes | $1.0 to $- | $1.6 to $0.6 |
| Depreciation and amortization | $7.4 | $21.5 |
| Stock-based compensation expense | $1.6 | $5.1 |
| Change in fair value of earnout receivable | $8.0 to $- | $7.2 to $(0.8) |
| Contingent purchase compensation expense | $0.1 | $0.3 |
| Foreign currency impact and other | $0.1 | $(0.1) |
| Acquisition and due diligence costs | $- | $0.9 |
| Severance and executive transition costs | $0.2 | $1.7 |
| Other non-recurring items | $2.0 to $1.5 | $3.0 to $2.5 |
| Non-GAAP net loss | $(6.0) to $(5.5) | $(25.8) to $(25.3) |

23.    On October 16, 2025, the Company filed a Prospectus with the SEC on a Form 424B5 with the SEC. The prospectus stated that the Company incorporated by reference the previously filed Item 8.01, as follows in relevant part:

We incorporate by reference in this prospectus supplement, the accompanying prospectus and the registration statement of which this prospectus supplement and the accompanying prospectus are a part the following information (other than, in each case, documents or information deemed to have been furnished and not filed in accordance with SEC rules, including any information furnished pursuant to Item 2.02 or Item 7.01 of Form 8-K or related exhibits furnished pursuant to Item 9.01 of Form 8-K):

\*                    \*                    \*

our Current Reports on Form 8-K filed with the SEC on January 2, 2025 (with respect to Items 1.01 and 8.01 and Exhibits 4.1, 5.1, 10.1 and 23.1 of Item 9.01 only), February 12, 2025, March 14, 2025 (with respect to Item 5.02 only), March 17, 2025, April 24, 2025 (with respect to Item 2.02 and Exhibit 99.1 of Item 9.01 only), April 24, 2025, June 16, 2025,

June  16, 2025, June 30, 2025 (with respect to Items 1.01, 3.02 and 8.01 and Exhibits 4.1, 5.1, 10.1, 10.2, 10.3 and 23.1 of Item 9.01 only), September  3, 2025, and **October 15, 2025 (with respect to Item 8.01 only)**

24.     On November 6, 2025, Veritone announced results for the third quarter ended September 30, 2025. The press release touted the Company's purported financial results, as well as the Company's purported "major contract wins." Specifically, the press release stated as follows, in relevant part:

"In the third quarter, we executed at a high level, growing our core AI software revenue more than 200%, solidifying our liquidity position through two equity offerings, and remaining on track to reach profitability by the latter part of 2026," said President and Chief Executive Officer, Ryan Steelberg. "Our third quarter results were driven by continued demand for our software products and services underpinned by our accelerating growth in Public Sector and in our Veritone Data Refinery bookings and delivery. These accomplishments are a testament to the strength of the Veritone platform, aiWARE, and the growing demand for our solutions in key, high-growth verticals, including the scaled tokenization of unstructured data."

**Third Quarter 2025 Financial Highlights**

•Revenue of $29.1 million, an increase of $7.1 million, or 32.4%, compared to Q3 2024.

•Software Products and Services revenues of $22.8 million, an increase of $8.2 million, or 55.5%, year over year. Excluding Veritone Hire revenue, Software Products and Services grew over 200% year over year led principally by our iDEMS and VDR initiatives.

•Managed Services revenue of $6.3 million, a decrease of $1.0 million, or 14.1%, year over year.

•GAAP gross profit of $18.7 million, an increase of $4.1 million, or 27.7%, year over year; GAAP gross margin of 64.3% as compared to 66.6% in Q3 2024, largely driven by the higher mix of lower margin revenue.

•Non-GAAP gross profit of $20.6 million, an increase of $4.9 million, or 31.2% year over year; non-GAAP gross margin of 70.6% as compared to 71.2% in Q3 2024.

•Operating loss of $15.8 million, a decrease of $6.7 million, or 29.7%, year over year.

•Net loss of $26.9 million, an increase of $5.1 million, or 23.6%, year over year. The year-over-year increase was principally driven by an $8.0 million non-cash change in the estimated fair value of earnout from the divestiture of Veritone One recorded in Q3 2025.

•Non-GAAP net loss from continuing operations of $5.8 million, a decrease of $5.3 million, or 47.8%, year-over-year.

\* \* \*

| Unaudited | Three Months Ended | | | Nine Months Ended | | |
|---|---|---|---|---|---|---|
| (in $000s) | September 30, 2025 | September 30, 2024 | Change | September 30, 2025 | September 30, 2024 | Change |
| Revenue | $ 29,118 | $ 21,993 | 32.4 % | $ 75,594 | $ 70,204 | 7.7 % |
| Operating loss | (15,802) | (22,492) | (29.7)% | (56,754) | (67,167) | (15.5)% |
| Net loss from continuing operations | (26,880) | (22,511) | 19.4 % | (73,553) | (72,072) | 2.1 % |
| Net loss | (26,880) | (21,746) | 23.6 % | (73,553) | (69,175) | 6.3 % |
| GAAP gross profit | 18,709 | 14,655 | 27.7 % | 47,767 | 47,397 | 0.8 % |
| Non-GAAP gross profit | 20,551 | 15,668 | 31.2 % | 51,715 | 50,589 | 2.2 % |
| Non-GAAP net loss from continuing operations | (5,796) | (11,097) | (47.8)% | (25,639) | (31,139) | (17.7)% |
| Non-GAAP net loss | (5,796) | (7,113) | (18.5)% | (25,639) | (21,579) | 18.8 % |

| Unaudited | Three Months Ended | | | Nine Months Ended | | |
|---|---|---|---|---|---|---|
| | September 30, 2025 | September 30, 2024 | Change | September 30, 2025 | September 30, 2024 | Change |
| Software Products & Services Revenue (in 000's) | $ 22,847 | $ 14,694 | 55.5 % | $ 54,799 | $ 45,546 | 20.3 % |
| Total Software Products & Services Customers(1) | 3,021 | 3,291 | (8.2)% | 3,021 | 3,291 | (8.2)% |
| Annual Recurring Revenue (in 000's)(2) | $ 68,832 | $ 63,280 | 8.8 % | $ 68,832 | $ 63,280 | 8.8 % |
| Total New Bookings (in 000's)(3) | $ 21,470 | $ 16,471 | 30.4 % | $ 21,470 | $ 16,471 | 30.4 % |
| Gross Revenue Retention(4) | > 90% | > 90% | | > 90% | > 90% | |

\* \* \*

## **Business Highlights**

•Veritone Data Refinery ("VDR"), a solution which helps enterprises transform unstructured data into AI-ready assets, has a qualified bookings and near-term pipeline of nearly $40.0 million, up 100% from August 2025.

•Closed 27 enterprise software contracts including those with ESPN, the NCAA, and Newsmax.

•Secured new partnership with Newsmax, which will enable Newsmax to fully search, utilize, and access its expanding library of content through Veritone's Digital Media Hub (DMH) application, powered by aiWARE.

•Secured a new agreement with ESPN to license its extensive archive of sports audio content from NCAA Div. I Championships.

•Closed 82 contracts from new and existing customers across federal, state, and local agencies including 30 new agencies, such as a top 5 LEA and San Antonio PD, further validating the critical nature of our AI software and strong customer retention.

•Expanded 15-year partnership with CBS News to include the right to license CBS Media Ventures' high-quality catalog of syndicated franchises, talk shows, and news magazines, in addition to our rights to license CBS News' extensive archives to TV producers, filmmakers, and content creators.

•Secured major contract wins to deploy VDR product offering with leading hyperscalers.

•Introduced new features in Veritone Redact including AI-powered voice masking, inverse blur, and transcription services in 64 languages, addressing critical privacy, compliance, and productivity needs across legal, law enforcement, and corporate environments.

25.     On November 7, 2025, the Company submitted its quarterly report for the period ended September 30, 2025 on a Form 10-Q filed with the SEC (the "3Q25 10-Q"). The 3Q25 10-Q affirmed the previously reported financial results, and further reported additional financial metrics, including the Company's purported assets, expenses, and accumulated other comprehensive income, as follows in relevant part:

| | September 30, 2025 | December 31, 2024 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $          36,233 | $          16,911 |
| Accounts receivable, net | 35,165 | 31,997 |
| Prepaid expenses and other current assets | 13,311 | 10,498 |
| Total current assets | 84,709 | 59,406 |
| Property, equipment, and improvements, net | 9,949 | 10,052 |
| Intangible assets, net | 42,328 | 59,500 |
| Goodwill | 53,110 | 53,110 |
| Restricted cash | 289 | 407 |
| Other assets | 9,836 | 15,585 |
| Total assets | $         200,221 | $        198,060 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $          11,462 | $         11,023 |
| Deferred revenue | 12,423 | 12,056 |
| Term Loan, current portion | 7,750 | 7,750 |
| Accrued purchase compensation, current portion | 1,350 | 1,200 |
| Accrued expenses and other current liabilities | 31,671 | 28,928 |
| Total current liabilities | 64,656 | 60,957 |
| Convertible Notes | 90,575 | 90,135 |
| Term Loan, non-current portion | 17,892 | 21,316 |
| Accrued purchase compensation, non-current portion | — | 900 |
| Other non-current liabilities | 11,080 | 11,300 |
| Total liabilities | 184,203 | 184,608 |
| Commitments and contingencies (Note 9) | | |
| Stockholders' equity: | | |
| Common stock, $0.001 par value; 150,000 and 75,000 shares authorized as of September 30, 2025 and December 31, 2024, respectively; 70,948 and 40,218 shares issued and outstanding as of September 30, 2025 and December 31, 2024, respectively | 72 | 41 |
| Additional paid-in capital | 557,401 | 480,477 |
| Accumulated other comprehensive income (loss) | (622) | 214 |
| Accumulated deficit | (540,833) | (467,280) |
| Total stockholders' equity | 16,018 | 13,452 |
| Total liabilities and stockholders' equity | $         200,221 | $        198,060 |

*                    *                    *

| | Three Months Ended | | Nine Months Ended | |
| --- | --- | --- | --- | --- |
| | September 30, 2025 | September 30, 2024 | September 30, 2025 | September 30, 2024 |
| Revenue | $ 29,118 | $ 21,993 | $ 75,594 | $ 70,204 |
| Operating expenses: | | | | |
| Cost of revenue (exclusive of depreciation and amortization shown separately below) | 8,567 | 6,325 | 23,879 | 19,614 |
| Sales and marketing | 10,511 | 10,245 | 31,712 | 31,400 |
| Research and development | 5,494 | 6,762 | 15,632 | 21,269 |
| General and administrative | 12,978 | 14,001 | 39,635 | 43,634 |
| Depreciation and amortization | 7,370 | 7,152 | 21,490 | 21,454 |
| Total operating expenses | 44,920 | 44,485 | 132,348 | 137,371 |
| Operating loss | (15,802) | (22,492) | (56,754) | (67,167) |
| Interest expense, net | 2,908 | 2,987 | 8,970 | 8,485 |
| Other expense (income), net | 8,453 | (393) | 7,554 | 133 |
| Loss from continuing operations before income taxes | (27,163) | (25,086) | (73,278) | (75,785) |
| Income taxes | (283) | (2,575) | 275 | (3,713) |
| Net loss from continuing operations | (26,880) | (22,511) | (73,553) | (72,072) |
| Net income from discontinued operations, net of income taxes | — | 765 | — | 2,897 |
| Net loss | $ (26,880) | $ (21,746) | $ (73,553) | $ (69,175) |
| Earnings (Loss) per share: | | | | |
| Loss per share from continuing operations, basic and diluted | $ (0.41) | $ (0.59) | $ (1.35) | $ (1.91) |
| Earnings per share from discontinued operations, basic and diluted | $ — | $ 0.02 | $ — | $ 0.08 |
| Loss per share, basic and diluted | $ (0.41) | $ (0.57) | $ (1.35) | $ (1.83) |
| Weighted-average common shares outstanding used in computing loss per share, basic and diluted | 64,947 | 38,087 | 54,367 | 37,753 |
| Comprehensive loss: | | | | |
| Net loss | $ (26,880) | $ (21,746) | $ (73,553) | $ (69,175) |
| Foreign currency translation adjustment, net of income taxes | 244 | 11 | (836) | 10 |
| Total comprehensive loss | $ (26,636) | $ (21,735) | $ (74,389) | $ (69,165) |

26. The 3Q25 10-Q reported the Company's purported contract liabilities, including those less revenue recognized, as follows in relevant part:

Contract Liabilities

Contract liabilities consist of deferred revenue. Deferred revenue represents billings under non-cancelable contracts before the related product or service is transferred to the customer. The portion of deferred revenue that is anticipated to be recognized as revenue during the succeeding twelve-month period is recorded as deferred revenue within the Company's condensed consolidated balance sheets. Deferred revenue was comprised of the following:

| | Deferred Revenue |
| --- | --- |
| Balance as of December 31, 2024 | $ 12,056 |
| Less: revenue recognized | (6,012) |
| Additions to deferred revenue | 7,419 |
| Balance as of March 31, 2025 | 13,463 |
| Less: revenue recognized | (7,889) |
| Additions to deferred revenue | 6,771 |
| Balance as of June 30, 2025 | 12,345 |
| Less: revenue recognized | (8,256) |
| Additions to deferred revenue | 8,334 |
| Balance as of September 30, 2025 | $ 12,423 |

27. The 3Q25 10-Q further reported the extent of the Company's purported internal control over financial reporting, including the contours of Company's alleged previously disclosed material weakness, including that the Company's material weakness over financial reporting "did not result in any identified material

CLASS ACTION COMPLAINT
10

misstatements to the financial statements." The 3Q25 10-Q further purported to stated that the Company is "committed to maintaining a strong control environment and believe that these remediation efforts represent continued improvement in our control environment." Specifically, the 3Q25 10-Q stated as follows, in relevant part:

During the preparation of our Quarterly Report on Form 10-Q for the quarter ended June 30, 2024, management identified a material weakness in internal control over financial reporting relating to a lack of an effective information and communication process that identified and assessed the source of and controls necessary to ensure the reliability of information used in financial reporting and for providing information required for effective activity level controls. ***This material weakness was not remediated as of September 30, 2025 and could have resulted in a material misstatement to our interim condensed consolidated financial statements that would not be prevented or detected on a timely basis.***

During the preparation of our Annual Report on Form 10-K for the fiscal years ended December 31, 2023 and 2022, management identified the following material weaknesses in internal control over financial reporting, which still exist as of September 30, 2025:

•Management identified a material weakness in internal control over financial reporting relating to the consolidation process and review of financial statements specifically pertaining to our design of controls to determine proper accounting for certain foreign exchange transactions and translation between Veritone, Inc. and certain foreign subsidiaries. ***This material weakness did not result in any identified material misstatements to the financial statements.*** However, this material weakness could have resulted in a material misstatement to our annual or interim condensed consolidated financial statements that would not be prevented or detected and corrected on a timely basis.

*               *               *

To further remediate the existing material weakness identified herein, the management team, including the Chief Executive Officer and Chief Financial Officer, have reaffirmed and re-emphasized the importance of internal controls, control consciousness and a strong control environment. ***We are committed to maintaining a strong control environment and believe that these remediation efforts represent continued improvement in our control environment***.

28.    On November 10, 2025, Veritone issued a press release including a statement clarifying its third-quarter commentary and providing context on certain non-cash and non-operational expenses that affected the third quarter of 2025 The press release stated as follows in relevant part:

Today, the Company is clarifying its third-quarter commentary and providing context on certain non-cash and non-operational expenses that affected the third quarter of 2025 because of certain published reports.

The one-time $8.0 million expense recorded in the third quarter of 2025 was a non-operational and non-cash expense reflecting the estimated change in the potential earn-out of the divestiture of Veritone One from October 2024. The change in the estimated earnout from this transaction which closed over a year ago has no impact on the Company's ongoing operations.

***In the third quarter of 2025, net loss from continuing operations was $26.9 million, an increase of $4.4 million, or 20%, as compared to Q3 2024.*** The change was primarily driven by the aforementioned $8.0 million non-cash adjustment in the estimated fair value of the Veritone One earnout, a business that the Company sold in October of 2024, and a $2.2 million change in the Company's tax provision. These changes were partially offset by a $6.7 million improvement in operating loss.

***During the quarter ended September 30, 2025, Veritone reported a non-GAAP net loss from continuing operations of $5.8 million, an improvement of 47.8%, or $5.3 million, from $11.1 million in the third quarter ended September 30, 2024.***

\*                    \*                    \*

| | Three Months Ended | |
| --- | --- | --- |
| | September 30, 2025 | September 30, 2024 |
| Non-GAAP net loss from continuing operations | $ (5,796) | $ (11,097) |
| Non-GAAP net income from discontinued operations | — | 3,984 |
| Non-GAAP net loss | $ (5,796) | $ (7,113) |
| | | |
| Adjusted earnings (loss) per share: | | |
| Adjusted loss per share from continuing operations, basic and diluted | $ (0.09) | $ (0.29) |
| Adjusted earnings per share from discontinued operations, basic and diluted | $ — | $ 0.10 |
| Adjusted loss per share, basic and diluted | $ (0.09) | $ (0.19) |
| Weighted-average common shares outstanding used in computing adjusted earnings (loss) per share, basic and diluted | 64,947 | 38,087 |

\*                    \*                    \*

| | Three Months Ended | | Nine Months Ended | |
| --- | --- | --- | --- | --- |
| | September 30, 2025 | September 30, 2024 | September 30, 2025 | September 30, 2024 |
| Net loss | $ (26,880) | $ (21,746) | $ (73,553) | $ (69,175) |
| Net income from discontinued operations, net of income taxes | — | (765) | — | (2,897) |
| Interest expense, net | 2,908 | 2,987 | 8,970 | 8,485 |
| Income taxes | (283) | (2,575) | 275 | (3,713) |
| Depreciation and amortization | 7,370 | 7,152 | 21,490 | 21,454 |
| Stock-based compensation | 1,643 | 2,099 | 5,096 | 5,691 |
| Change in fair value of earnout receivable | 7,997 | — | 7,213 | — |
| Contingent purchase compensation expense | 137 | 367 | 350 | 1,252 |
| Foreign currency impact and other | 472 | (393) | 310 | (37) |
| Acquisition and due diligence costs | 664 | 368 | 1,520 | 3,257 |
| (Gain) Loss on asset disposition | — | — | — | 172 |
| Severance and executive transition costs | 176 | 1,409 | 1,676 | 4,372 |
| Lender consent fees | — | — | 1,014 | — |
| Non-GAAP net loss from continuing operations | (5,796) | (11,097) | (25,639) | (31,139) |
| Non-GAAP net income from discontinued operations(1) | — | 3,984 | — | 9,560 |
| Non-GAAP net loss | $ (5,796) | $ (7,113) | $ (25,639) | $ (21,579) |

*                    *                    *

| | Three Months Ended | | Nine Months Ended | |
|---|---|---|---|---|
| | September 30, 2025 | September 30, 2024 | September 30, 2025 | September 30, 2024 |
| Revenue | $ 29,118 | $ 21,993 | $ 75,594 | $ 70,204 |
| Operating expenses: | | | | |
| Cost of revenue (exclusive of depreciation and amortization) | 8,567 | 6,325 | 23,879 | 19,614 |
| Depreciation and amortization related to cost of revenue | 1,842 | 1,013 | 3,948 | 3,193 |
| GAAP gross profit | 18,709 | 14,655 | 47,767 | 47,397 |
| Depreciation and amortization related to cost of revenue | 1,842 | 1,013 | 3,948 | 3,193 |
| Stock-based compensation | — | — | — | (1) |
| Non-GAAP gross profit | $ 20,551 | $ 15,668 | $ 51,715 | $ 50,589 |
| GAAP gross margin | 64.3 % | 66.6 % | 63.2 % | 67.5 % |
| Non-GAAP gross margin | 70.6 % | 71.2 % | 68.4 % | 72.1 % |

29.	The above statements identified in ¶¶ 21-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company inaccurately recorded and/or misclassified certain revenue and costs; (2) that, as a result, the Company overstated its revenue, assets, accounts receivable, royalties and other comprehensive income; (3) that Veritone maintained deficient internal controls over accounting and financial reporting; (4) that, as a result of the foregoing, the Company would be forced to restate certain of its financial statements, and (5) that, as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

30.	On March 26, 2026, after the market closed, Veritone issued a press release, announcing limited fourth quarter 2025 financial results, including revenue of in the range of $18.1 million to $30.0 million, and that the "Company has provided a range of expected revenue for the three and twelve months ended December 31, 2025 because it is ***currently finalizing its accounting determination of certain revenue transactions under ASC 606.***" Specifically, the press release stated as follows, in relevant part:

| Unaudited (in millions) | Three Months Ended | | | | Year Ended | | | |
|---|---|---|---|---|---|---|---|---|
| | December 31, 2025 | | | December 31, 2024 | December 31, 2025 | | | December 31, 2024 |
| Revenue | $18.1 | - | $30.0 | $ 22.4 | $93.7 | - | $105.6 | $ 92.6 |
| Operating loss | (23.3) | - | (11.4) | (21.0) | (80.1) | - | (68.2) | (88.2) |
| Net loss from continuing operations | (37.0) | - | (25.1) | (24.3) | (110.5) | - | (98.6) | (96.3) |
| Net loss | (37.0) | - | (25.1) | 31.8 | (110.5) | - | (98.6) | (37.4) |
| Non-GAAP net loss from continuing operations | (13.9) | - | (2.0) | (9.7) | (39.5) | - | (27.6) | (40.8) |
| Non-GAAP net loss | (13.9) | - | (2.0) | (9.1) | (39.5) | - | (27.6) | (30.7) |

*__The Company has provided a range of expected revenue for the three and twelve months ended December 31, 2025 because it is currently finalizing its accounting determination of certain revenue transactions under ASC 606.__* The revenue transactions under review are (1) a non-monetary transaction in which Veritone sold an on-premise software license in exchange for certain intangible rights with a negotiated price of $13.0 million in Q4 2025, which has an estimated value based upon the stand alone selling price of the software of between $0.4 million and $11.3 million and (2) the estimated fair value associated with an on-premise software sale in fiscal year 2025 of between $1.8 million to $2.8 million.

31. On this news, Veritone's stock price fell $0.77, or 29.5%, to close at $1.84 per share on March 27, 2026, on unusually heavy trading volume.

32. The above statements identified in ¶ 30 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company inaccurately recorded and/or misclassified certain revenue and costs; (2) that, as a result, the Company overstated its revenue, assets, accounts receivable, royalties and other comprehensive income; (3) that Veritone maintained deficient internal controls over accounting and financial reporting; (4) that, as a result of the foregoing, the Company would be forced to restate certain of its financial statements, and (5) that, as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

33. On April 1, 2026, before the market opened, the Company filed a Form NT 10-K with the SEC, disclosing the Company "was unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2025 . . . within the prescribed time period primarily due to *__delays in finalizing the Company's accounting determination of certain barter revenue__*

*transactions under ASC 606.*" The filing further stated the "ongoing accounting analysis" may "result in out-of-period adjustments, the largest of which may result in a reduction in revenue for the quarter ended September 30, 2025 of $1.5 million to $2.5 million, or 5.2% to 8.6%, of the total $29.1 million of revenue previously reported for such quarter." The Company disclosed it was evaluating "whether the previously issued financial statements for the quarters ended June 30, 2025 and September 30, 2025 may need to be *revised or restated.*" Specifically, the filing stated as follows, in relevant part:

> Veritone, Inc. (the "Company") was unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (the "Form 10-K") with the Securities and Exchange Commission (the "SEC") within the prescribed time period primarily due to *delays in finalizing the Company's accounting determination of certain barter revenue transactions under ASC 606,* which include (1) a non-monetary transaction in which the Company sold an on-premise software license in exchange for certain intangible rights with a contracted price of $13.0 million during the fourth quarter of fiscal year 2025 and (2) the estimated fair value associated with an on-premise software sale in the fiscal year ended December 31, 2025. *The Company's ongoing accounting analysis of the estimated fair value associated with an on-premise software sale in the fiscal year ended December 31, 2025 may result in out-of-period adjustments, the largest of which may result in a reduction in revenue for the quarter ended September 30, 2025 of $1.5 million to $2.5 million, or 5.2% to 8.6%,* of the total $29.1 million of revenue previously reported for such quarter. Management is evaluating the overall impact of the possible out-of-period adjustments and whether *the previously issued financial statements for the quarters ended June 30, 2025 and September 30, 2025 may need to be revised or restated*. Given the accounting complexity associated with these revenue transactions, the finalization of the accounting determination of the estimated fair value of these revenue transactions under ASC 606 has resulted in delays in the preparation of the Company's consolidated financial statements for the fiscal year ended December 31, 2025 and, as a result, a delay in the filing of the Form 10-K.

34.     On this news, Veritone's stock price fell $0.18, or 9.14%, to close at $1.79 per share on April 1, 2026, on unusually heavy trading volume.

35.     The above statements identified in ¶ 33 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company inaccurately recorded and/or misclassified certain

revenue and costs; (2) that, as a result, the Company overstated its revenue, assets, accounts receivable, royalties and other comprehensive income; (3) that Veritone maintained deficient internal controls over accounting and financial reporting; (4) that, as a result of the foregoing, the Company would be forced to restate certain of its financial statements, and (5) that, as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

36.　On April 14, 2026, after the market closed, Veritone filed a Form 8-K with the SEC which disclosed the Company had "determined that the Company's previously issued unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2025 *should no longer be relied upon*" due to errors which resulted in significant overstatement of revenue and understatement of net loss. The filing disclosed a number of errors, including "an *error in the valuation of consideration received associated with an on-premise software sold and delivered to a customer*" as well as the "*misclassification of revenue and costs in transactions in which the Company acted as an agent under ASC 606, Revenue from Contracts with Customers*." Specifically, the filing stated as follows, in relevant part:

> On April 8, 2026, the management and the audit committee (the "Audit Committee") of the Board of Directors of Veritone, Inc. (the "Company"), after consideration of the relevant facts and circumstances, determined tha*t the Company's previously issued unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2025 should no longer be relied upon due to the following errors:*
>
> •Management identified an *error in the valuation of consideration received associated with an on-premise software sold and delivered to a customer* in the quarter ended September 30, 2025, in exchange for a non-monetary asset. The error resulted in an *approximate $2.2 million overstatement of revenue or approximately 8% and 3% of revenue* (as previously reported) during the three and nine months periods ended September 30, 2025, respectively, and a corresponding overstatement of prepaid expenses and other current assets and long-term other assets;

•Management identified errors that resulted in an approximate $0.2 million and $0.9 million overstatement of revenue in the three and nine month period ended September 30, 2025 or approximately 1% of revenue (as previously reported) in each period, and a corresponding $0.1 million and $0.7 million approximate overstatement of royalties expense, or approximately 1% and 3% of cost of revenue (exclusive of depreciation and amortization) (as previously reported) for the three and nine month period ended September 30, 2025, respectively, related to recognizing revenue for a transaction prior to meeting step 1 under ASC 606, Revenue from Contracts with Customers and clerical billing errors. The foregoing errors also resulted in a $0.9 million corresponding overstatement of accounts receivable as of September 30, 2025 or approximately 3% of accounts receivable (as previously reported) and a $0.7 million overstatement of royalties payable which are classified within accrued expenses and other current liabilities, which represented 2% of accrued expenses and other current liabilities (as previously reported) as of September 30, 2025;

•Management identified an error that resulted in an approximate $0.4 million overstatement of cost of revenue (exclusive of depreciation and amortization) in the nine months period ended September 30, 2025 and a corresponding overstatement of accrued expenses and other current liabilities, which represented 2% of cost of revenue (exclusive of depreciation and amortization) (as previously reported) and 1% of accrued expenses and other current liabilities (as previously reported);

•Management identified an error that resulted in an equal overstatement of revenue and cost of revenue (exclusive of depreciation and amortization) in the amounts of approximately $0.1 million and approximately $0.2 million, or less than 1% of revenue and cost of revenue (exclusive of depreciation and amortization) (as previously reported) during the three and nine month periods ended September 30, 2025, respectively. *The foregoing error was the result of a misclassification of revenue and costs in transactions in which the Company acted as an agent under ASC 606, Revenue from Contracts with Customers;* and

•Management identified an error that resulted in an understatement of $1.0 million or approximately 2% of goodwill (as previously reported), understatement of $0.5 million or 1% of intangible assets, net (as previously reported), *and overstatement of $1.5 million or 246% of accumulated other comprehensive income (loss) (as previously reported) as of September 30, 2025.* The foregoing error resulted in an overstatement of $0.4 million and an understatement of $1.5 million of foreign currency translation adjustment, net of income taxes in the three and nine month period ended September 30, 2025, respectively.

The impact of the errors described above on the unaudited condensed consolidated balance sheet as of September 30, 2025, is as follows:

| (in thousands) | As of September 30, 2025 | | |
| --- | --- | --- | --- |
| | As Previously Reported | Adjustment | As Restated |
| Accounts receivable, net | 35,165 | (909) | 34,256 |
| Prepaid expenses and other current assets | 13,311 | (140) | 13,171 |
| Total current assets | 84,709 | (1,049) | 83,660 |
| Intangible assets, net | 42,328 | 521 | 42,849 |
| Goodwill | 53,110 | 1,009 | 54,119 |
| Other assets | 9,836 | (2,097) | 7,739 |
| Total assets | 200,221 | (1,616) | 198,605 |
| Accrued expenses and other current liabilities | 31,671 | (1,093) | 30,578 |
| Total current liabilities | 64,656 | (1,093) | 63,563 |
| Total liabilities | 184,203 | (1,093) | 183,110 |
| Accumulated other comprehensive income (loss) | (622) | 1,530 | 908 |
| Accumulated deficit | (540,833) | (2,053) | (542,886) |
| Total stockholders' equity | 16,018 | (523) | 15,495 |
| Total liabilities and stockholders' equity | 200,221 | (1,616) | 198,605 |

\*                    \*                    \*

| (in thousands) | For the Three Months Ended September 30, 2025 | | |
| --- | --- | --- | --- |
| | As Previously Reported | Adjustment | As Restated |
| Revenue | 29,118 | (2,486) | 26,632 |
| Cost of revenue (exclusive of depreciation and amortization) | 8,567 | (127) | 8,440 |
| Operating loss | (15,802) | (2,359) | (18,161) |
| Net loss | (26,880) | (2,359) | (29,239) |
| Loss per share, basic and diluted | $(0.41) | $(0.04) | $(0.45) |
| Foreign currency translation adjustment, net of income taxes | 244 | (428) | (184) |
| Total comprehensive loss | (26,636) | (2,787) | (29,423) |

| (in thousands) | For the Nine Months Ended September 30, 2025 | | |
| --- | --- | --- | --- |
| | As Previously Reported | Adjustment | As Restated |
| Revenue | 75,594 | (3,306) | 72,288 |
| Cost of revenue (exclusive of depreciation and amortization) | 23,879 | (1,253) | 22,626 |
| Operating loss | (56,754) | (2,053) | (58,807) |
| Net loss | (73,553) | (2,053) | (75,606) |
| Loss per share, basic and diluted | $(1.35) | $(0.04) | $(1.39) |
| Foreign currency translation adjustment, net of income taxes | (836) | 1,530 | 694 |
| Total comprehensive loss | (74,389) | (523) | (74,912) |

\*                    \*                    \*

CLASS ACTION COMPLAINT

18

| (in thousands) | For the Nine Months Ended September 30, 2025 | | |
| --- | --- | --- | --- |
| | As Previously Reported | Adjustment | As Restated |
| Cash flows from operating activities: | | | |
| Net loss | (73,553) | (2,053) | (75,606) |
| Non-cash barter revenue | — | (1,054) | (1,054) |
| Accounts receivable | (4,459) | 909 | (3,550) |
| Prepaid expenses and other current assets | (1,321) | 1,229 | (92) |
| Other assets | (1,288) | 2,097 | 809 |
| Accrued expenses and other current liabilities | 1,565 | (1,128) | 437 |
| Net cash used in operating activities | (41,163) | — | (41,163) |
| Effects of exchange rates on cash, cash equivalents, and restricted cash | (973) | (1) | (974) |

\*          \*          \*

***Any related press releases, stockholder communications, investor presentations or other communications describing relevant portions of the unaudited condensed consolidated financial statements as of and for the three and nine months ended September 30, 2025 should no longer be relied upon.*** The Company intends to restate its prior period unaudited condensed consolidated financial statements for the three and nine months ended September 30, 2025 in an amendment to the Company's Quarterly Report on Form 10-Q for the three and nine months ended September 30, 2025 (the "Q3 2025 Form 10-Q/A"), to be filed as soon as practicable.

37.     On this news, Veritone's stock price fell $0.19, or 8.3%, to close at $2.09 per share on April 15, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Veritone securities between October 14, 2025 and April 14, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Veritone's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at

this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Veritone shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Veritone or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Veritone; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

44.    The market for Veritone's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Veritone's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Veritone's securities relying upon the integrity of the market price of the Company's securities and market information relating to Veritone, and have been damaged thereby.

45.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Veritone's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Veritone's business, operations, and prospects as alleged herein.

46.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Veritone's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's

securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

47. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

48. During the Class Period, Plaintiff and the Class purchased Veritone's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

49. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Veritone, their control over, and/or receipt and/or modification of Veritone's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Veritone, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

50. The market for Veritone's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Veritone's securities traded at artificially

inflated prices during the Class Period.  On October 15, 2025 the Company's share price closed at a Class Period high of $8.39 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Veritone's securities and market information relating to Veritone, and have been damaged thereby.

51.    During the Class Period, the artificial inflation of Veritone's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Veritone's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Veritone and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

52.    At all relevant times, the market for Veritone's securities was an efficient market for the following reasons, among others:

(a)    Veritone shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Veritone filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Veritone regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services

and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Veritone was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

53. As a result of the foregoing, the market for Veritone's securities promptly digested current information regarding Veritone from all publicly available sources and reflected such information in Veritone's share price. Under these circumstances, all purchasers of Veritone's securities during the Class Period suffered similar injury through their purchase of Veritone's securities at artificially inflated prices and a presumption of reliance applies.

54. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

55. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the

statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Veritone who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Veritone's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

58. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of

---

CLASS ACTION COMPLAINT

25

the Company's securities in an effort to maintain artificially high market prices for Veritone's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Veritone's financial well-being and prospects, as specified herein.

60. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Veritone's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Veritone and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other

members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veritone's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Veritone's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired

Veritone's securities during the Class Period at artificially high prices and were damaged thereby.

64. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Veritone was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Veritone securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

67. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68. Individual Defendants acted as controlling persons of Veritone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company,

including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.   In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.   As set forth above, Veritone and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  May 21, 2026

**GLANCY PRONGAY WOLKE & ROTTER**

By:  */s/Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Ahmed Elwan*

**SWORN CERTIFICATION OF PLAINTIFF**

**VERITONE, INC. SECURITIES LITIGATION**

I, Ahmed Elwan, certify that:

1.  I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2.  I did not purchase the Veritone, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Veritone, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

5/17/2026
_____
Date

_____
Ahmed Elwan

**Ahmed Elwan's Transactions in Veritone, Inc. (VERI)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 10/30/2025 | Bought | 10,992 | $5.93 |
| 10/30/2025 | Bought | 12,194 | $5.94 |
| 10/30/2025 | Bought | 664 | $6.02 |
| 12/29/2025 | Bought | 12 | $4.91 |